IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AMMI E. WITHROW,

      Plaintiff,

      v.

Civil Action 2:15-cv-1437
Judge Algenon L. Marbley
Magistrate Judge Elizabeth P. Deavers

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Ammi E. Withrow, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 12), the Commissioner's Memorandum in Opposition (ECF No. 17), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

### I. BACKGROUND

Plaintiff protectively filed her application for benefits in August 2011, alleging that she has been disabled since May 19, 1984[1] due to bipolar disorder, learning disabilities, panic attacks, a mood disorder, and frequent urinary tract infections. (R. at 197-205, 229.) Plaintiff's application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. Plaintiff appeared and testified at an initial hearing in front of

---

[1] Plaintiff amended her alleged onset date to August 24, 2011. (R. at 216).

Administrative Law Judge, Rodney E. Dixon ("ALJ Dixon"), on April 5, 2013.  (R. at 31-46.)  ALJ Dixon subsequently left the Office of Disability Adjudication and Review prior to issuing a decision.  On September 19, 2013, Plaintiff, again represented by counsel, appeared and testified at a subsequent hearing in front of Administrative Law Judge Timothy G. Keller ("ALJ" or "ALJ Keller").  (R. at 54-68.)  ALJ Keller continued the hearing until December 3, 2013.  At the December 3, 2013 hearing, Plaintiff, again represented by counsel, appeared and testified.  (R. at 73–89.)  Carl W. Hartung, M.R.C., a vocational expert, also appeared and testified at the hearing.  (R. at 89-92.)

On December 18, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 10-21.)   At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since August 17, 2011, the application date.  (R. at 12.)  The ALJ found that Plaintiff had the

---

[2]Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1.       Is the claimant engaged in substantial gainful activity?
    2.       Does the claimant suffer from one or more severe impairments?
    3.       Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
    4.       Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
    5.       Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

following severe impairments: a bipolar disorder, an anxiety disorder, and a mood disorder. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13.) The ALJ explicitly considered Listings 12.04 and 12.06 and concluded that she did not satisfy the paragraph B criteria. At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] retains the ability to understand, remember, and carry out simple repetitive tasks. She can maintain attention and concentration for two-hour segments over an eight-hour work period. [Plaintiff] is able to respond appropriately to supervisors and coworkers in a task-oriented setting where contact with others is casual and infrequent. She is able to adapt to simple changes and avoid hazards in a setting without strict production quotas.

(R. at 15.) In assessing Plaintiff's RFC, the ALJ found Plaintiff's testimony regarding the extent of her symptoms and limitations to be not fully credible. (R. at 18-19.) The ALJ assigned "little weight" to the opinion of Dr. Huspen, "some weight" to the opinion of consultative examiner James Tanley, and "great weight" to the opinions of Drs. Tangeman and Semmelman. Relying on the VE's testimony, the ALJ concluded that Plaintiff is unable to perform her past relevant work, but she could perform a significant number of jobs in the national economy. (R. at 19-20.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 20-21.)

On February 27, 2015, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–5.) Plaintiff then timely commenced the instant action.

3

In her Statement of Errors, Plaintiff raises a single contention of error. More specifically, Plaintiff maintains that the ALJ erred in finding that Plaintiff's anxiety disorder does not satisfy the requirements of Listing 12.06. According to Plaintiff, the record evidence establishes that she has marked restriction in her activities of daily living and also in maintaining her social functioning. In support of this contention, Plaintiff relies upon her testimony and the opinions of Drs. Tanley and Huspen. In addition, although Plaintiff does not independently challenge the ALJ's assessment and weighing of Dr. Huspen's opinions, she notes that one of the bases upon which the ALJ relied to reject his opinions is incorrect and argues that his opinion supports a finding that she satisfied Listing 12.06. Plaintiff also asks the Court to "carefully consider the manner in which ALJ Keller conducted the hearing in considering not only whether [her] impairments meet a listing, but also whether his adverse credibility findings should be adopted." (Pl.'s Statement of Errors 13, ECF No. 12-1.)

In her Memorandum in Opposition, the Commissioner maintains that the ALJ reasonably concluded that Plaintiff had less than marked restriction in her activities of daily living and social functioning. The Commissioner further asserts that substantial evidence supports that the ALJ's decision to give little weight to Dr. Huspen's opinions and also his credibility determination.

## II.  STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### III. ANALYSIS

As discussed above, although Plaintiff only directly challenges the ALJ's Listing determination in her sole contention of error, she tangentially attacks the ALJ's rejection of Dr. Huspen's opinions and also the ALJ's credibility assessment. The Undersigned will therefore consider whether the ALJ erred in his Listing analysis before considering whether substantial

evidence supports his consideration and assessment of Dr. Huspen's opinion and his credibility determination.

**A.     Listing 12.06**

In determining whether a claimant is disabled, an ALJ must consider whether the claimant's impairments meet Social Security Listing requirements. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. § 404.1520(d). A claimant's impairment must meet every element of a Listing before the Commissioner may conclude that he or she is disabled. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria."). *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The claimant shoulders the burden of producing medical evidence that establishes that all of the elements are satisfied. It is not sufficient to come to close to meeting the conditions of a Listing. *See, e.g., Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (Commissioner's decision affirmed where medical evidence "almost establishes a disability" under Listing). The regulations provide that in making a medical equivalence determination, the Social Security Administration will "consider the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c).

Listing 12 addresses nine specific mental disorders. Every mental disorder addressed in the Listing includes *two* components, a diagnostic component, which consists of a description of the mental disorder; and a severity component, which consists of specific criteria measuring the severity of the identified mental disorder. *See* 20 C.F.R. pt. 404, Subpt. P, App. 1,

6

(A)–(C).

Listing 12.06 addresses "anxiety-related disorders." 20 C.F.R. Pt 404, Subpt. P, App. 1 § 12.06 (West 2016). To satisfy this Listing, Plaintiff must demonstrate that she satisfies both the "A" *and* "B" criteria or alternatively, that she satisfies the "C" criteria of the Listings. Here, Plaintiff does not contend that she meets the requirements of paragraph C in either Listing, but instead that she satisfies the part "B" criteria. Listing 12.06, like the other Listing 12 mental health listings, require a claimant to satisfy paragraph B criteria by showing marked impairment in at least two of the following: (1) activities of daily living; (2) maintaining social functioning; (3) maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *See* 20 C .F.R. Pt 404, Subpt. P, App. 1 §§ 12.03, 12.06 (West 2016).

According to Plaintiff, the ALJ erred in failing to find that she has marked limitations in her activities of daily living and social functioning. She does not, however, challenge the ALJ's determination that she has only moderate difficulties with regard to concentration, persistence, or pace and that she has not experienced any episodes of decompensation. Thus, to satisfy Listing 12.06, Plaintiff must demonstrate that she has marked limitations in *both* her activities of daily living and her social functioning.

The criteria in paragraph B "describe[s] impairment-related functional limitations that are incompatible with the ability to do any gainful activity." 20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00(A) (West 2016). The term "marked" as it is used under the criteria is not defined by specific quantitative threshold, but is instead evaluated "by the nature and overall degree of interference with function." *Id*. at § 12.00(C).

**1.     Activities of Daily Living**

With regard to activities of daily living, the regulations provide as follows:

> Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office. In the context of your overall situation, we assess the quality of these activities by their independence, appropriateness, effectiveness, and sustainability. We will determine the extent to which you are capable of initiating and participating in activities independent of supervision or direction.

(*Id.*)

The Undersigned finds that the ALJ's reasonably concluded that Plaintiff failed to satisfy her burden to demonstrate that she has marked restrictions in her activities of daily living. In reaching this conclusion, the ALJ reasoned as follows:

> In activities of daily living, [Plaintiff] has mild restriction. [Plaintiff] lives with her family. She assists in getting her children up and ready for school. [Plaintiff] is capable of independently caring for her personal needs, including hygiene and grooming. She completes household chores including making beds, cleaning rooms, doing laundry, washing dishes, shopping, and vacuuming. [Plaintiff] is able to shop for groceries and clothing. She is able to care for her cat. [Plaintiff] enjoys drawing, painting, shopping, and sometimes partying. She reportedly likes spending time with her children and watching television.

(R. at 13 (internal citations to the record omitted).)  Later in his decision, the ALJ also noted that Plaintiff drives a motor vehicle, helps her children with their homework and gets them off to school, and attends church. (R. at 13–14, 17.)  In addition, he accorded great weight to the opinions of state-agency physicians Drs. Tangeman and Semmelman, who both opined that Plaintiff is only mildly restricted in her activities of daily living and that she did not satisfy the Listing's diagnostic criteria. (R. at 17–18, 94–102; 111–15.)

Consistent with the ALJ's explanation in support of his Listing determination, the record reflects that Plaintiff reported on an October 2012 questionnaire that she is able to cook, do

8

dishes, mop and vacuum the floor, make her and her children's beds, clean the counters and table, clean toilets, drive a car, do laundry, shop for groceries, play with and take care of her four children and help them with their homework, care for their pets, and watch television. (R. at 264–65.)

In addition, during her administrative hearings, she testified that she liked to play with her kids in her flowerbeds; that she attends church; that she cooks, cleans her home, and does laundry; that she shops; that she watches television; that she drives a couple of times per week to the grocery store; that she takes care of her pets, which include fish, chinchillas, guinea pigs, and a cat; that she helped a friend clean "a couple weeks" prior to the September 19, 2013 hearing; and that she plays with her three-month-old granddaughters. (R. at 33, 37, 38, 41, 44, 46, 55, 83, 87–88.)

Further, in an Adult Function Report, Plaintiff reported that she takes care of her husband and four children; that she helps the kids take care of the pets; that she hates to cook, but will cook pizza or "easy stuff" and sometimes fry chicken; that she "makes beds, clean rooms, unload[s] [and] reload[s] [the] dishwasher [and] do[es] laundry"; that she shops for groceries, clothes for her, and family items; and that she "love[s]" to draw and paint and also likes to shop, but that she is unable to draw and paint as much as she would like because her kids use up her paint. (R. at 238–41.)

Finally, Plaintiff reported to consultative examiner Dr. Tanley that she drove to the examination and that she cleans, watches television, and tries to read. (R. at 371–72.) Significantly, although Dr. Tanley expressed no opinion concerning Plaintiff's degree of

9

impairment in her activities of daily living, he assigned a Global Assessment of Functioning ("GAF") score of 60, which is indicative of only moderate symptoms.[3]

In sum, based upon the foregoing, the Undersigned concludes that the ALJ reasonably concluded that Plaintiff did not have marked restrictions in her activities of daily living. Because Plaintiff must demonstrate that she has marked restrictions in *both* her activities of daily living and social functioning, this finding requires the conclusion that she has failed to satisfy Listing 12.06 and that her sole contention of error should be overruled. Nevertheless, the Undersigned will consider whether the ALJ erred in assessing Plaintiff's level of impairment with regard to her social functioning as an alternative basis for concluding that her sole contention of error should be overruled.

2. **Social Functioning**

For social functioning, the regulations provide as follows:

Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. You may demonstrate impaired social functioning by, for example, a history of altercations, evictions, firings, fear of strangers, avoidance of interpersonal relationships, or social isolation. You may exhibit strength in social functioning by such things as your ability to initiate social contacts with others, communicate clearly with others, or interact and actively participate in group activities. We also need to consider cooperative behaviors, consideration for others, awareness of others' feelings, and social maturity. Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers.

---

[3]The GAF scale is used to report a clinician's judgment of an individual's overall level of functioning. Clinicians select a specific GAF score within the ten-point range by evaluating whether the individual is functioning at the higher or lower end of the range. A GAF score of 51-60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33-34.

20 C.F.R. pt. 404, Subpt. P, App. 1, § 12.00(C).

The Undersigned finds that the ALJ's reasonably concluded that Plaintiff failed to satisfy her burden to demonstrate that she has marked restrictions in her social functioning. In reaching this conclusion, the ALJ reasoned as follows:

> In social functioning, [Plaintiff] has moderate difficulties. [Plaintiff] is able to cohabitate with her family. She reported that she does not like being around people; however, she is able to be around her kids all day and socializes with her friends regularly. She was able to travel on a plane with her husband. She reported that she enjoys partying, which is a known social activity. [Plaintiff] is able to go shopping and she reportedly goes tanning with her friend. [Plaintiff] also testified that she took a vacation to Florida and participated in sexual adventures.

(R. at 13–14 (internal citations to the record omitted).) The ALJ also noted later in his opinion that Plaintiff attends church. In addition, he credited the opinions of Drs. Tangeman and Semmelman, who both opined that Plaintiff was only moderately limited in maintaining social functioning and that she did not satisfy the Listing's diagnostic criteria. (R. at 17–18, 94–102; 111–15.)

Consistent with the ALJ's explanation in support of his Listing determination, the record reflects that Plaintiff reported on an October 2012 questionnaire that she spends her days playing with her four children and that she had flown to Texas the prior year to visit her father, who had cancer, and to attend a wedding of her brother-in-law. (R. at 87, 265.)

In addition, during her administrative hearings, she testified that liked to play with her kids; that she "liked hanging out with [her] friend," but not people she did not know; that she attends church; that she grocery shops with her friends Mindy or Kelly, her mom, or her sister; that she sporadically cleans with her friend Kelly Hughes, that she flew on a plane to visit her father-in-law, who had cancer, and attend a wedding in Texas; that she plays with her

11

grandaughters; and that her friend Kelly drove her to the December 3, 2013 hearing. (R. at 33, 37, 41, 44, 54–55, 83, 87, 88.)

Moreover, in an Adult Function Report, Plaintiff reported that she helps her kids and husband with "EVERYTHING!"; that she does not like to be around people a lot; that she is with her kids all day and around her friends when she wants to be; that she estimates she spends time with her friends between 1-2 times per week to 1-2 times per month; that she goes tanning with her friend; and that she sometimes "love[s] to party," but other times wants to stay in her bedroom. (R. at 238–42.)

Finally, Plaintiff reported to consultative examiner Dr. Tanley that she gets along with her sisters, her husband, and her four children, but not her brother because he steals. (R. at 372.) Dr. Tanley described Plaintiff's behavior as "cooperative" and her thoughts as "coherent, relevant, and goal oriented." (*Id.*) With regard to Plaintiff's abilities and limitations in responding appropriately to supervision and coworkers in a work setting, Dr. Tanley opined:

> [Plaintiff] presented today with bland and tearful affect with variable eye contact. "I do okay with some neighbors. I just don't like to get to know people." [Plaintiff] has never held a job. Given her Bipolar Disorder and her presentation today, there appear to be limitations in her ability to conform to social expectations in a work setting.

(R. at 374.) The ALJ acknowledged Dr. Tanley's opinion that Plaintiff was limited in her abilities to conform to social expectations in the work place, but pointed out that "the degree of limitations was not assessed." (R. at 18.) The ALJ further noted that Dr. Tanley assigned a GAF score of 60, "denoting moderate symptoms of moderate difficulty," and concluded that this GAF assessment is "supported by the totality of the objective medical evidentiary record and is also consistent with the other credible opinion evidence of the record." (*Id.*) The Undersigned finds

12

no error with the ALJ's consideration of Dr. Tanley's opinion and conclusion that it does not support Plaintiff's contention that she suffers from marked impairment in social functioning.

In sum, based upon the foregoing, the Undersigned concludes that the ALJ reasonably concluded that Plaintiff did not have marked restrictions in her activities of daily living. For this alternative reason, Plaintiff's sole contention of error should be found to be without merit.

**B.      The ALJ's Consideration of Dr. Huspen's Opinions**

Plaintiff's notation that the ALJ incorrectly discounted Dr. Huspen's opinions based upon his incorrect conclusion that he was not a mental health specialist does not convince the Undersigned to conclude that the ALJ's Listing determination is not supported by substantial evidence. Significantly, Dr. Huspen did not opine that Plaintiff was markedly limited in her activities of daily living or her social functioning. Instead, the record reflects that after a single intake visit, Dr. Huspen assigned a GAF score of 50[4] and that he again re-assigned a GAF score of 50 at a follow-up visit. The ALJ considered these GAF scores, but assigned them "little weight." He reasoned as follows:

> A GAF rating represents a particular clinician's subjective evaluation at a single point in time. The GAF rating may vary from day to day and time to time, and between practitioners. The GAF rating is unlike most other opinion evidence we evaluate because it is a rating. However, as with other opinion evidence, a GAF rating needs supporting evidence to be given much weight. By itself, the GAF rating cannot be used to "raise" or "lower" someone's level of function. The GAF rating is only a snapshot opinion about the level of functioning. Unless the clinician clearly explains the reasons behind the GAF rating, and the period to which the rating applies, it does not provide a reliable longitudinal picture of the claimant's mental functioning for a disability analysis. Here, reasoning for such a GAF score was not provided. Further, [Plaintiff's] doctor was a DO, he is not a psychiatrist or a psychologist. The doctor's opinion appears to rest at least in part on an assessment

---

[4] A GAF score of 41-50 is indicative of serious symptoms. *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 33-34.

13

>of mental health impairments, outside the doctor's area of expertise. Additionally, his opinions were inconsistent with the longitudinal evidentiary record and were not supported by other credible opinion evidence of record.

(R. at 18.) The Undersigned finds that the ALJ appropriately considered and reasonably assessed the GAF scores that Dr. Huspen assigned following his first and second appointments with Plaintiff. The two treatment notes from Dr. Huspen do not identify him as a specialist in mental health and reflect that he performed a physical examination of Plaintiff, even noting that she had seasonal allergies. (R. at 419–22.) Even assuming, however, that the ALJ erred in his conclusion that Dr. Huspen was not a mental health specialist, this error is *de minimus* in light of the other well-supported and unchallenged justifications he offered for rejecting the opined GAF scores. Furthermore, Dr. Huspen's opined GAF scores, even if credited as an accurate reflection of Plaintiff's functioning on those days, would not render the ALJ's listing determination erroneous given the substantial evidence in the record supporting his conclusions.

**C.    Credibility Assessment**

Plaintiff's challenges to the ALJ's credibility assessment are likewise unavailing. "The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a

14

consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996)[5]; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted). The Sixth Circuit has held that "even if an ALJ's adverse

---

[5]SSR 16-3p, which became effective March 28, 2016, superceded and rescinded SSR 96-7p. *See* SSR 16-3p, 2016 WL 1119029, at *1. Because SSR 16-3p does not include explicit language to the contrary, it is not to be applied retroactively. *See Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541–42 (6th Cir. 2007) (declining to retroactively apply a newly effective Social Security Ruling in the absence of language reflecting the Administration's intent to apply it retroactively).

credibility determination is based partially on invalid reasons, harmless error analysis applies to the determination, and the ALJ's decision will be upheld as long as substantial evidence remains to support it." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012)).

Within his credibility analysis, the ALJ considered Plaintiff's treatment records, including the diagnoses and observations of the treating sources and Plaintiff's self-reports; the effectiveness and the absence of side effects from her medication regimen; that Plaintiff stopped working not because of her impairments, but because her young son required surgery; her evasiveness during the hearing regarding her prior self-employment history; her activities of daily living; her inconsistent statements concerning whether she needed to be alone or around people; her non-compliance with treatment recommendations and medications; the opinion evidence; and several other instances of inconsistencies in the record. (R. at 15–18.)

The Undersigned finds that the ALJ's detailed discussion of reasons for his credibility assessment amply supplies substantial evidence supporting his credibility finding. Plaintiff's contention that the manner in which the ALJ conducted the first hearing calls into question his credibility assessment is unavailing. A review of the transcript does not demonstrate that the ALJ acted unreasonably. Instead, it appears that the ALJ took a break so that Plaintiff could calm down after getting upset during the hearing and that he subsequently made a decision to continue the hearing to another date when Plaintiff became upset again. Nothing in either the transcript of the ALJ's decision reflects that he harbored bias against Plaintiff.

In sum, the Undersigned finds that the ALJ's assessment of Plaintiff's credibility was based on consideration of the entire record and is supported by substantial evidence.

Accordingly, applying the applicable deferential standard of review, the Undersigned concludes that the ALJ's credibility determination was not erroneous. Moreover, neither the manner in which the ALJ conducted the hearing nor his credibility assessment render his listing determination erroneous. It is therefore **RECOMMENDED** that the Court find Plaintiff's sole contention of error to be without merit.

## IV.  CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## V.  PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, he or she may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

17

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date: August 16, 2016             /s/ *Elizabeth A. Preston Deavers*
                                  ELIZABETH A. PRESTON DEAVERS
                                  UNITED STATES MAGISTRATE JUDGE