### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **AMMI E. WITHROW,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 2:15-cv-1437** |
| | : | |
| **v.** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| **COMMISSIONER OF SOCIAL** | : | **Magistrate Judge Deavers** |
| **SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |

### OPINION & ORDER

This matter is before the Court on Plaintiff Ammi E. Withrow's Objection (Doc. 20) to the Magistrate Judge's **Report and Recommendation** ("R & R") (Doc. 19), which recommended that the Court overrule Plaintiff's Statement of Errors (Doc. 12) and affirm the Commissioner of Social Security's ("Commissioner") decision. Upon independent review by the Court, and for the reasons set forth below, Plaintiff's Objections are hereby **OVERRULED**, and the Court **ADOPTS** the Magistrate Judge's **Report and Recommendation**.

### I.    BACKGROUND

The relevant facts concerning Plaintiff's medical records, as well as the ALJ's opinion, are thoroughly set forth in the Magistrate Judge's R & R, (Doc. 19); therefore, the Court will only incorporate those facts that are relevant to this decision.

Plaintiff protectively filed her application for benefits in August 2011, alleging that she has been disabled since May 19, 1984. (First Certified Admin. R., Doc. 7 at 201.) Plaintiff avers that she suffers from bipolar disorder, learning disabilities, panic attacks, a mood disorder, and frequent urinary tract infections. (R. at 276.) Plaintiff's application was denied initially and, upon reconsideration, Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").

Case: 2:15-cv-01437-ALM-EPD Doc #: 21 Filed: 09/28/16 Page: 2 of 10  PAGEID #: 537

ALJ Rodney E. Dixon held a hearing on April 5, 2013 where Plaintiff appeared, with counsel,

and testified, but ALJ Dixon left the Office of Disability Adjudication and Review prior to

issuing a decision. (*Id.*at 31-54.) On September 19, 2013, Plaintiff, again with counsel, appeared

and testified at a subsequent hearing in front of ALJ Timothy G. Keller. (*Id.* at 55-73.) The ALJ

continued the hearing until December 3, 2013. (*Id*. at 72-73.) At the December 3, 2013 hearing,

Plaintiff appeared with counsel and testified. (*Id.* at 74-96.) Carl W. Hartung, a vocational expert,

also testified. (*Id.* at 93-96.) The ALJ ultimately determined that Plaintiff was not disabled within

the meaning of the Social Security Act. (*Id.* at 11-25.)

In his opinion denying benefits, the ALJ conducted the required five-step sequential

analysis for a disabilities benefits claim. *See* 20 C.F.R. § 416.920(a)(4).[1] The ALJ determined at

step one that Plaintiff did not engage in substantially gainful activity since the application date of

August 17, 2011. (R. at 16.) At step two, the ALJ found that Plaintiff suffered from the following

---

[1] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled....
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled....
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled....
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled....
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

severe impairments: a bipolar disorder, an anxiety disorder, and a mood disorder.  (*Id.* at 16-17.)

At step three, he found that these impairments, whether taken alone or in combination with the

others, did not meet or equal the requirements of any section of the listed impairments set forth

in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.* at 17-18.) At step four, the ALJ found that

Plaintiff had the following residual functional capacity:

> After careful consideration of the entire record, the [ALJ] finds that [Plaintiff] has
> the residual functional capacity to perform a full range of work at all exertional
> levels but with the following nonexertional limitations: [Plaintiff] retains the
> ability to understand, remember, and carry out simple repetitive tasks.  She can
> maintain attention and concentration for two-hour segments over an eight-hour
> work period. [Plaintiff] is able to respond appropriately to supervisors and
> coworkers in a task-oriented setting where contact with others is casual and
> infrequent. She is able to adapt to simple changes and avoid hazards in a setting
> without strict production quotas.

(*Id.* at 19.) During the assessment of Plaintiff's residual functional capacity, the ALJ found the

Plaintiff's testimony regarding the extent of her symptoms and limitations was not fully credible.

(*Id.* at 19-23.) The ALJ assigned "great weight" to the opinions of Drs. Tangeman and

Semmelman, "some weight" to the opinion of consultative examiner James Tanley, and "little

weight" to the opinion of Dr. Huspen. (*Id.* at 21-22.) Further, based on the vocational expert's

testimony and Plaintiff's residual functional capacity, the ALJ concluded that Plaintiff could

perform a significant number of jobs in the national economy even though unable to perform her

past relevant work. (*Id.* at 23-24.) Consequently, the ALJ concluded that Plaintiff was not

disabled under the Social Security Act. (*Id.* at 25.)

In her Statement of Errors, Plaintiff asserts that the ALJ erred in finding that her anxiety

disorder does not satisfy the requirements set forth by Section 12.06 of the Social Security

Listing of Impairments. Plaintiff alleges that the record evidence establishes that she has marked

restriction in her activities of daily living and also in maintaining social function. She supports

this allegation by relying on her testimony and the opinions of Drs. Tanley and Huspen. Plaintiff

also asked the Court to take into account the manner in which ALJ Keller held the hearing in determining whether her impairments meet a listing under Section 12.06, and whether his adverse credibility findings should be adopted. (Supplement Memo in Support of Pl.'s Statement of Specific Errors, Doc 12-1 at 13-14.)

On August 16, 2016, the Magistrate judge issued an R & R, overruling Plaintiff's Statement of Errors in its entirety, and recommending the Court affirm the Commissioner's decision. (Doc 19.) Plaintiff timely objected to the Magistrate Judge's R & R on August 29, 2016. (Doc. 20.)

## II.    STANDARD OF REVIEW

This Court, upon objection to an R & R, is required to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). The Court may accept, reject, or modify any of the magistrate judge's findings or recommendations. *See Id.* In this matter, the Court's review "is limited to determining whether the Commissioner's decisions 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)).

Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Ellis v. Schweicker*, 739 F.2d 245, 248 (6th Cir. 1984). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984). The findings of the Commissioner are not subject to reversal merely because there exists in the record

substantial evidence to support a different conclusion. *Buxton v. Halter, Comm'r of Soc. Sec.*, 246 F.3d 762 (6th Cir. 2001). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the Court would have arrived at a different conclusion. *Elkins v. Sec'y of Health and Human Servs.*, 658 F.2d 437, 439 (6th Cir. 1981).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Additionally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the [Social Security Administration ("SSA")] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013), *reh'g denied* (May 2, 2013).

### III.    ANALYSIS

Plaintiff raises two objections to the Magistrate's R & R, urging the Court to sustain them and remand the matter either for an award of benefits or for further proceedings in front of a different ALJ because the Magistrate upheld: (1) the ALJ's finding that Plaintiff's impairments did not meet § 12.06 of the Listings of Impairments; and (2) the ALJ's giving little weight to the

testimony of Dr. Huspen, Plaintiff's treating physician. The Court will address each matter in turn.

### A.  Plaintiff's Mental Illness Does Not Meet § 12.06 Criteria

Plaintiff objects to the Magistrate Judge's recommendation to uphold the ALJ's finding that Plaintiff's mental illiness does not meet Section 12.06 of the Listing of Impairments, which sets forth the criteria an applicant must meet for an award of benefits for anxiety-related disorders. (Doc. 20.) *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06. An applicant can satisfy § 12.06 by proving Parts (A) and (B) of the regulation. Part (A) is the diagnostic component, which are criteria to determine requisite symptoms for a finding of disability warranting benefits; Part (B) is the severity component, which are criteria to determine requisite interference in an applicant's life for the same. *See id.*, (A)-(B). Specifically, Plaintiff argues that she has recurrent severe panic attacks that have caused marked impairment in daily living and in maintaining social function that satisfy the requirements of § 12.06, which demands a finding of severe impairment if an applicant suffers "[r]ecurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week" that result in "[m]arked restriction of activities of daily living" and "[m]arked difficulties in maintaining social functioning." 20 C.F.R. Pt 404, Subpt. P, App. 1 § 12.06 (West 2016).

The ALJ found Plaintiff's symptoms sufficiently severe. (R. at 16-17; Doc. 19 at 7.) At issue here, therefore, is the ALJ's finding only as to Part (B) of the regulation. Citing Plaintiff's self-reporting, the ALJ found that Plaintiff suffered "mild restriction" of activities of daily living, noting that she lives with her family, helps her children get up and ready for school, and can independently care for her personal needs, including hygiene and grooming. (*Id.* (citing Function

Report, Ex. 4E, *id.* at 241-48; *id.*, Ex. 10E at 267-69).) The ALJ also noted that Plaintiff does

household chores, is able to shop for groceries and clothing, and can care for her cat. (*Id.*)

Finally, the ALJ noted that Plaintiff enjoys drawing, painting, shopping, partying, spending time

with her children, and watching television. (*Id.*) As to social functioning, the ALJ found that

Plaintiff has "moderate difficulties," noting that she is able to be around her kids all day, and

socializes with her friends regularly, including taking regular trips to the tanning salon. (*Id.*)

Plaintiff argues that there is no substantial record evidence to establish that her mental

illness does not cause a marked restriction of daily living activities or marked difficulties in

maintaining social functioning. Relying on *Gayheart v. Commissioner of Social Security*, 710

F.3d 365 (6th Cir. 2013), Plaintiff asserts that the determination of whether her anxiety markedly

restricts her functioning centers on whether she can do activities "on a *sustained basis*." 710 F.3d

at 377 (citing 20 C.F.R. § 404.1520a(c)(2); 20 C.F.R. Part 404, Subpart P, App. 1, at 12:00

("Social functioning refers to your capacity to interact independently, appropriately, effectively,

and on a sustained basis with other individuals.")). Plaintiff's characterization of the law is

correct yet, as applied to these facts, unavailing.

In making its determination that Plaintiff's functioning is not markedly impaired by her

mental impairments, the ALJ relied on Plaintiff's self-reporting of daily accomplishments, which

is a finding of her level of functioning on a sustained basis. (*See* Function Report, R., Ex. 10E at

269 ("What do you do during an ordinary day? I make our bed and the kids' beds, I clean up the

house, . . . I feed and water the cat[,] . . . I take care of my kids, I unload and reload the dishes, I

do laundry and help my son with his homework.").) So although Plaintiff characterizes her

activities as being performed "on a limited basis," her own reporting reveals otherwise. (Doc. 20

at 3.) And although the activities described are "basic," her performing them regularly

necessarily supports a finding that her impairments are less than marked. This is not to say that it

commands such a finding, and indeed the Court might have found differently than the ALJ, but

the Court now need only be satisfied that substantial evidence supports the ALJ's finding.

*Buxton*, 246 F.3d at 772; *Elkins*, 658 F.2d at 439. As discussed above, such substantial evidence

exists and, therefore, the ALJ's finding that Plaintiff has not suffered a marked restriction of

activities of daily living or marked difficulties in maintaining social function was not in error. As

such, the Court **OVERRULES** Plaintiff's objection as to this finding.

### B. Dr. Huspen's Testimony Is Not Dispositive

Plaintiff argues that the Magistrate Judge erred in finding that the ALJ's determination of

Dr. Huspen's credibility was *de minimis* error. The ALJ gave Dr. Huspen's testimony little

weight for the reason, *inter alia*, that he was a Doctor of Osteopathy, not a psychiatrist or

psychologist and, therefore, his opinion of Plaintiff's mental illness rested "outside [his] area of

expertise." (R. at 22.) Plaintiff avers that Dr. Huspen is in fact a psychiatrist, and that he works

for Adena Counseling Center, the office at which Plaintiff was treated by two other psychiatrists

previously. (Statement of Errors, Doc. 12 at 12.) So the ALJ's finding affording Dr. Huspen little

weight was based, at least in part, on a mistaken understanding of Dr. Huspen's expertise. The

only argument Plaintiff offers why the ALJ's misapprehension of Dr. Huspen's expertise is

consequential is that "Dr. Huspen's opinion is entitled to . . . controlling weight."[2] (Doc. 20 at 3-

---

[2] There are three tiers of medical source evidence when determining eligibility for social security
due to disability: (1) nonexamining sources, i.e. sources who have not examined the claimant; (2)
examining sources, i.e. sources who have examined the claimant; and (3) treating sources, i.e.
sources "who regularly treat[] the claimant." *Gayheart*, 710 F.3d at 375 (citing 20 C.F.R. §§
404.1527(c)(1)-(2), 404.1502). The opinions of treating sources are afforded controlling weight
"if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical
and laboratory diagnostic techniques"; and (2) the opinion 'is not inconsistent with the other
substantial evidence in [the] case record.'" 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2))
(alteration in original). An ALJ must "provide 'good reasons' for discounting the weight given to

4.) Although the record indicates that the ALJ likely weighed Dr. Huspen's opinion

insufficiently, Plaintiff's argument is unavailing because, as discussed below, the weight given to

Dr. Huspen's opinion is immaterial to the dispositive issue, which is whether Plaintiff suffers

marked impairment due to her mental illness.

Dr. Huspen saw Plaintiff once on June 20, 2013 and another time on August 20, 2013.

(Assesments, R., Exs. 19F, 20F at 423-26.) At each visit he examined her physical and

psychosocial health, rating her approximately a 50 on the Global Assessment of Functioning

Scale ("GAF"). The GAF is a scale from 0 to 100 that considers the level of "psychological,

social, and occupational functioning on a hypothetical continuum of mental health-illness."[3]

Global Assessment of Functioning (GAF) Scale, University of Albany, *available at*

*http://www.albany.edu/counseling_center/docs/GAF.pdf* (last seen September 27, 2016). A rating

of 50 indicates "[s]erious symptoms or any serious impairment in social, occupational, or school

functioning." *Id.* This supports Plaintiff's argument that she suffers marked impairment, but it

does not conclusively establish it. As the ALJ explained:

> The GAF rating may vary from day to day and time to time, and between
> practitioners. The GAF rating is unlike most other opinion evidence [it]
> evaluate[s] because it is a rating. However, as with other opinion evidence, a GAF
> rating needs supporting evidence to be given much weight. By itself, the GAF
> rating cannot be used to "raise" or "lower" someone's level of function. The GAF
> rating is only a snapshot opinion about the level of functioning. . . . Unless the
> clinician clearly explains the reasons behind the GAF rating, and the period to
> which the rating applies, it does not provide a reliable longitudinal picture of the
> claimant's mental functioning for a disability analysis. Here reasoning for such a
> GAF score was not provided.

---

a treating-source opinion." *Id.* (citation omitted). If the ALJ does not give the treating source
controlling weight, then "the opinion is weighed based on the length, frequency, nature, and
extent of the treatment relationship, . . . as well as the treating source's area of specialty and the
degree to which the opinion is consistent with the record as a whole and is supported by relevant
evidence." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)-(6)).
[3] The Court takes judicial notice of this noncontroversial, publicly available foundational fact.
*See United States v. Harris*, 331 F.2d 600, 601 (6th Cir. 1964).

9

(R. at 22.)

Dr. Huspen's unsupported GAF rating thus does little to help determine the severity of Plaintiff's impairment for purposes of § 12.06. Because they were unsupported by any reasoning and referenced no time period whatsoever, the GAF ratings were unreliable. Further, even if the GAF ratings were reliable, they do not establish conclusively that Plaintiff suffers marked impairment. Again, the central inquiry is not whether Plaintiff's function has been impaired, but rather whether Plaintiff's function is impaired on a *sustained* basis. *See Gayheart*, 710 F.3d at 377. So even if the ALJ were to have found Dr. Huspen's opinion controlling, it would have had no effect on the dispositive question at issue here. The Court thus finds that the Magistrate Judge did not err in finding *de minimis* the ALJ's determination that Dr. Huspen's opinion be afforded little weight, **OVERRULING** Plaintiff's objection as to this finding.

### IV.    CONCLUSION

For the aforementioned reasons, the Court hereby **OVERRULES** Plaintiff's Objection, and **ADOPTS** the Magistrate Judge's **Report and Recommendation**. The case is hereby **DISMISSED.**

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　  /s/ Algenon L. Marbley
　　　　　　　　　　　　　　　　　　　　ALGENON L. MARBLEY
　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

**DATED:  September 28, 2016**